**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

MUSTAFA SHABAZZ,

                              Plaintiff,

        v.                                              No. 03-CV-1520
                                                          (DNH/DRH)

KANG LEE, Facility Health Director, Clinton
Correctional Facility; DANIEL A. SENKOWSKI,
Superintendent, Clinton Correctional Facility;
THOMAS G. EAGEN, Director, Inmate
Grievance Program; DAVID A. MILLER,
Superintendent, Eastern Correctional Facility;
E.J. AVERSANO, Registered Nurse, Eastern
Correctional Facility; PAULA OSTERHOLT,
Registered Nurse II, Eastern Correctional Facility;
and ARLENE BRANCH, Regional Director, Food
and Nutritional Services,

                              Defendants.

_____

**APPEARANCES:**                          **OF COUNSEL:**

MUSTAFA SHABAZZ
Plaintiff Pro Se
82-A-3491
Green Haven Correctional Facility
Post Office Box 4000
Stormville, New York 12582

HON. ELIOT SPITZER                         STEVEN H. SCHWARTZ, ESQ.
Attorney General for the                   Assistant Attorney General
   State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

Plaintiff pro se Mustafa Shabazz (Shabazz"), an inmate in the custody of the New York State Department of Correctional Services ("DOCS"), brings this action pursuant to 42 U.S.C. § 1983 alleging that defendants, seven DOCS employees, violated his constitutional rights under the First, Eighth, and Fourteenth Amendments.  Am. Compl. (Docket No. 8). Presently pending is defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56.  Docket No. 29.[2]  Shaheen opposes the motion.  Docket No. 31.  For the reasons which follow, it is recommended that defendants' motion be granted.  It is also recommended that the amended complaint be dismissed without prejudice as to the unserved defendant.


### I. Background

The facts are presented in the light most favorable to Shabazz as the non-moving party.  See Ertman v. United States, 165 F. 3d 204, 206 (2d Cir. 1999).

At all relevant times, Shabazz was an inmate in the custody of DOCS.  Shabazz was housed at Clinton Correctional Facility ("Clinton") from June 22, 1999 to October 16, 2001 and at Eastern Correctional Facility ("Eastern") from October 17, 2001 to January 12, 2004. See Defs. Mem. of Law (Docket No. 29) at Ex. A.  In early December 2000, Shabazz reported to sick call at Clinton complaining of blurred vision, fatigue, constant urination, and a

---

[1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

[2] The motion is brought on behalf of all remaining defendants except David A. Senkowski, who has neither been served with process nor otherwise appeared in this action.  See section III infra.

swollen and cracked tongue and was treated by Dr. Lee.  Am. Compl. at ¶ 18.  After

examination, Dr. Lee diagnosed Shabazz as having a sore throat and gave Shabazz

antibiotics.  Id.; Lee Decl. ( Docket No. 29) at ¶ 7.  On December 22, 2000, Shabazz was

examined by various medical personnel at Clinton and it was determined that his symptoms

were consistent with diabetes.  Am. Compl. at ¶ 20.  In early January 2001, Shabazz was

released from the Clinton infirmary and was given insulin injections twice a day to treat his

diabetes.  Id. at ¶ 22.  During February and March of 2001, Shabazz requested that he be

given daily finger stick blood tests to monitor his blood sugar but was denied by Dr. Lee.  Id.

at ¶ 24.  In response, Shabazz filed grievances requesting that his diabetes be monitored

more closely and Dr. Lee be reprimanded for not properly diagnosing his condition.  See

Defs. Mem. of Law at Ex. B.  The Superintendent at Clinton determined that Shabazz was

receiving appropriate care and his determination was upheld by the Central Office Review

Committee ("CORC").  Id.

　　　　Between April and October of 2001, Shabazz was repeatedly sent on outside medical

trips to treat his diabetes.  Am. Compl. at ¶ 28.  While on these trips, Shabazz complained

that he was not being given his medically prescribed diet.  Id. at ¶¶ 28-30.  In response,

Shabazz filed various grievances.  See Defs. Mem. of Law at Exs. C-E.  In each case, the

Superintendent found that Shabazz was being given a proper diet and his decisions were

upheld by CORC.  Id.  On October 17, 2001, Shabazz was transferred to Eastern.  Id. at Ex.

A.  While at Eastern, Shabazz filed two grievances alleging, inter alia, that he was being

denied his medication and was being subjected to retaliation and unprofessional conduct by

3

the medical staff.  <u>Id.</u> at Exs. I, J.  The Superintendent denied both grievances and his decisions were upheld by CORC.  <u>Id.</u>  This action followed.

## II. Discussion

Shabazz asserts nine causes of action in his amended complaint, each alleging that defendants were deliberately indifferent to his serious medical needs.  Shabazz also alleges that Eagen violated his Fourteenth Amendment rights by instituting a policy that created inadequate medical care throughout DOCS.  Defendants seek judgment on all claims.

## A. Legal Standard

A motion for summary judgment may be granted if there is no genuine issue as to any material fact if supported by affidavits or other suitable evidence and the moving party is entitled to judgment as a matter of law. The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  Facts are material if they may affect the outcome of the case as determined by substantive law.  <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 248 (1986).  All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party.  <u>Skubel v. Fuoroli</u>, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial. The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts.  <u>Matsushita Elec. Indus. Co. v. Zenith</u>

4

Radio Corp., 475 U.S. 574, 586 (1986).  It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment.  Gallo v. Prudential Residential Servs. 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).  When, as here, a party seeks summary judgment against a pro se litigant, a court must afford the non-movant special solicitude.  Id.  However, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.  Anderson, 477 U.S. at 247-48.

## B. Exhaustion

Defendants first contend that Shabazz has failed to exhaust his administrative remedies regarding his claims against defendants Branch, Osterholt, and Aversano.  The Prison Litigation Reform Act of 1995 ("PLRA"), Pub. L. No. 104-134, 803(d), 110 Stat. 1321-66, 71 (1996), subjects suits concerning prison conditions brought under federal law to certain prerequisites.  Specifically, the PLRA dictates that a prisoner confined to any jail, prison, or correctional facility must exhaust all available administrative remedies prior to bringing any suit concerning prison life, be it in general or of a particular episode.  See 42 U.S.C. § 1997e(a); Porter v. Nussle, 534 U.S. 516, 532 (2002).  Administrative remedies include all appellate remedies provided within the system.  Fletcher v. Haase, No. Civ. 99-9549 (GEL), 2002 WL 313799, at *1 (S.D.N.Y. Feb. 27, 2002).  There may be special circumstances, however, that render administrative remedies unavailable and the exhaustion

5

requirement may be fulfilled by an inmate's reasonable belief that certain actions have sufficed fully to exhaust administrative remedies.  <u>Abney v. McGinnis</u>, 380 F.3d 663, 667 (2d Cir. 2004).

"The PLRA's exhaustion requirement is designed to 'afford[] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" <u>Johnson v. Testman</u>, 380 F.3d 691, 697 (2d Cir. 2004) (quoting <u>Porter</u>, 534 U.S. at 524-25)).  "'[A] grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought.'" <u>Johnson</u>, 380 F 3d. at 697 (quoting <u>Strong v. David</u>, 297 F.3d 646, 650 (7th Cir. 2002)). Inmates must provide sufficient information to "allow prison officials to take appropriate responsive measures." <u>Johnson</u>, 380 F.3d at 697.

DOCS has established a grievance process which includes a three-stage review and appeal. <u>See</u> N.Y. Correct. Law § 139 (McKinney 2003); N.Y. Comp. Codes R. & Regs. tit.7, § 701.1-.16 (2003).  When an inmate files a grievance, it is investigated and reviewed by an Inmate Grievance Resolution Committee ("IGRC"). If the grievance cannot be resolved informally, a hearing is held. The IGRC decision may be appealed to the Superintendent of the facility.  Finally, an inmate may appeal the Superintendent's decision to the CORC.  N.Y. Comp. Codes R. & Regs. tit.7, § 701.7(a) (2003).

**1. Branch**[3]

In his fifth cause of action, Shabazz alleges that Branch put his life at risk by only providing a general population bag lunch for outside medical trips.  Defendants contend that although Shabazz filed grievances regarding the meals provided to him, Shabazz did not appeal any grievance decisions about Branch.  Shabazz contends that he properly exhausted these claims and that they were all denied based on Branch's recommendation. See Defs. Mem. of Law at Exs. C-E.  However, Branch's recommendations were only sought in one of these grievances.

In grievance CL-44542-01, the food service administrator at Clinton contacted Branch to see if the "trip meals" he was serving to diabetic inmates were proper.  See Ex. D.  Branch responded by making recommendations to omit certain foods from the meals if prison officials were aware that the inmate was diabetic.  Id.  Although Shabazz does not specifically name Branch in the grievance, he provided sufficient information to "allow prison officials to take appropriate responsive measures." Johnson, 380 F.3d at 697.  "[T]here is no absolute requirement that an inmate identify every individual by name in order to exhaust his remedies as to those individuals." Boomer v. Deperio, 405 F. Supp. 2d 259, 262 (W.D.N.Y. 2005).  Thus, Shabazz has exhausted his administrative remedies as to Branch.

It is recommended that defendants' motion on this ground be denied.

---

[3] Branch is a "Nutritional Services Administrator for [DOCS] and a registered dietician."  See Branch Aff. (Docket No. 29) at ¶ 1.  Branch works with the food service administrators at various DOCS facilities to ensure that they are properly serving inmates on special diets.  Id.

## 2. Osterholt

Defendants contend that Shabazz failed properly to pursue his administrative remedies as to the allegations he made against Osterholt in his amended complaint. Shabazz contends that he properly exhausted his claims against Osterholt.

In his eighth and ninth causes of action, Shabazz alleged that Osterholt either failed or refused to provide him with his prescribed medications and falsified records to indicate that he had been receiving his insulin.  Although grievance ECF-19296-03 discusses Shabazz's denial of his prescribed medication, Shabazz specifically names Aversano as the offending nurse and fails to allege any facts that would alert the prison to any misconduct by Osterholt. Further, none of Shabazz's grievances address Osterholt's alleged falsifying of his medical records.  The only grievance that mentions Osterholt was filed on November 21, 2003, and does not discuss any of alleged conduct that Shabazz asserts against Osterholt in his amended complaint.  See Defs. Mem. of Law at Ex. L.

Therefore, it is recommended that defendants' motion on this ground be granted.

## 3. Aversano

Liberally construed, the amended complaint alleges that defendant Aversano, a nurse, retaliated against and harassed Shabazz.  Defendants contend that when Shabazz appealed the decision in grievance ECF-19296-03 to CORC, the grievance only concerned the denial of medication and not any alleged harassment by Aversano.  Shabazz contends that his claims of harassment against Aversano are supported by grievances ECF-19296-03 and ECF-19088-03.  Although Shabazz does not explicitly allege in either grievance that

Aversano harassed him, grievance ECF-19088-03 does state that "Nurse Aversano intentionally ignored dispensing my medication and violated my federal civil rights." Defs. Mem. of Law at Ex. J. The grievance also requested that Shabazz be compensated "for the retaliation of filing complaints against staff for medical negligence." Liberally construed, grievance ECF-19088-03 alerted prison officials to "the nature of the wrong for which redress is sought" and was sufficient to give prison officials the information necessary to conduct an investigation into Aversano's alleged retaliation and possible harassment of Shabazz. See Johnson, 380 F.3d at 697.

Therefore, it is recommended that defendants' motion on this ground be denied.

### C. Personal Involvement

"'[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)). The doctrine of respondeat superior is not a substitute for personal involvement. Polk County v. Dodson, 454 U.S. 312, 325 (1981). Thus, supervisory officials may not be held liable merely because they held a position of authority. Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996). Supervisory personnel may be considered "personally involved," however, if they participated in the conspiracy, learned of the violation but failed to remedy the wrong, created a policy or custom under which unconstitutional practices occurred or allowed such policy or custom to continue, or were grossly negligent in managing subordinates who caused the violation. Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986) (citations omitted).

9

Here, Shabazz contends that Eagen "instituted policy that created inadequate medical care throughout the Correctional facilities by upholding recommendations that a reasonable person would not have made." See Am. Compl. at ¶ 48.  However, Shabazz fails to allege any facts regarding what the policy is or how it relates to his alleged violations, instead simply stating that this policy exists.  "A complaint that essentially regurgitates the relevant 'personal involvement' standard, without offering any facts indicating that, or how, an individual defendant in a supervisory role was personally involved in a constitutional violation, cannot withstand dismissal." Davis v. County of Nassau, 355 F. Supp. 2d 668, 677 (E.D.N.Y. 2005); see also Ricciuti v. New York City Transit Authority, 941 F.2d 119, 124 (2d Cir. 1991) ("our prior cases suggest that an allegation of municipal policy or custom would be insufficient if wholly conclusory").  Thus, Shabazz's allegations as to Eagen's personal involvement are wholly conclusory and thus insufficient to survive dismissal.

Therefore, it is recommended that defendants' motion for summary judgment on this ground be granted and Eagen be dismissed from the case.

### D. Eighth Amendment

Shabazz contends that defendants Lee, Aversano, and Miller were deliberately indifferent to his serious medical needs.

A prisoner advancing an Eighth Amendment claim for denial of medical care must allege and prove deliberate indifference to a serious medical need.  Wilson v. Seiter, 501 U.S. 294, 297 (1991); Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994).  More than negligence is required "but less than conduct undertaken for the very purpose of causing

10

harm." Hathaway, 37 F.3d at 66.  The test for a § 1983 claim is twofold.  First, the prisoner must show that there was a sufficiently serious medical need.  Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998).  Second, the prisoner must show that the prison official demonstrated deliberate indifference by having knowledge of the risk and failing to take measures to avoid the harm.  Id.  "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted."  Farmer v. Brennan, 511 U.S. 825, 844 (1994).

A serious medical need is "'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'"  Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995) (quoting Johnson v. Busby, 953 F.2d 349, 351 (8th Cir. 1991)).  An impairment that a reasonable doctor or patient would find important and worthy to treat, a medical condition that affects the daily activities of an individual, or the existence of chronic and substantial pain are all factors that are relevant in the consideration of whether a medical condition was serious.  Chance, 143 F.3d at 702-03.

Deliberate indifference requires the prisoner to prove that the prison official knew of and disregarded the prisoner's serious medical needs.  Id. at 702.  Mere disagreement over proper treatment does not create a constitutional claim as long as the treatment was adequate.  Id. at 703.  Allegations of negligence or malpractice do not constitute deliberate indifference unless the malpractice involved culpable recklessness.  Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996).

Here, diabetes suffices to constitute a serious medical need.  See Kaminsky v. Rosenblum, 929 F.2d 922, 923 (2d Cir. 1991); Brooks v. Berg, 270 F. Supp. 2d 302, 312 (N.D.N.Y. 2003 (Kahn, J.).  However, even if Shabazz's condition is considered serious, his Eighth Amendment claims fail to show that defendants were deliberately indifferent.

### 1. Dr. Lee

In his first and second causes of action, Shabazz contends that Dr. Lee was deliberately indifferent to his serious medical needs.  Shabazz contends that on or about December 9 or 12, 2000, Dr. Lee failed properly to diagnose his diabetes, thus "putting [Shabazz's] life at serious risk."  Am. Compl. at ¶¶ 18-19, 42.  However, "'a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.'"  Hathaway v. Coughlin, 99 F.3d at 553 (quoting Estelle v. Gamble, 429 U.S. 97, 106 & n.14 (1976)).  Shabazz also contends that after he was diagnosed with diabetes, Dr. Lee refused to order daily finger stick blood tests to monitor his condition.  Dr. Lee stated that Shabazz's condition quickly stabilized and only required that Shabazz be given blood tests in three-month intervals instead of daily finger stick blood tests.  Lee Aff. (Docket No. 29) at ¶ 14.  Shabazz fails to demonstrate any harm from this course of treatment, instead alleging in conclusory terms that he was forced to suffer "irreparable harm."  Am. Compl. at ¶ 27.  Thus, because Dr. Lee's treatment of Shabazz was adequate, Shabazz's mere disagreement over proper treatment methods fails to demonstrate an Eighth Amendment violation.  See Chance, 143

F.3d at 703 ("[i]t is well-established that mere disagreement over the proper treatment does not create a constitutional claim.").

Therefore, it is recommended that defendants' motion as to Dr. Lee be granted.

### 2. Aversano

In his seventh cause of action, Shabazz contends that "on or about the week of May 26-31, 2003," Aversano refused to administer his medication and prevented other nurses from doing so. However, Aversano has provided the diabetic flow sheets from the period of May 26 through June 1 that indicate Shabazz received nearly all of his prescribed medication. See Defs. Mem. of Law at Ex. J. Further, Aversano has provided the refusal-of-medical-examination form from May 30, 2003 which indicates Shabazz refused to wait for his blood test and insulin. Id. Thus, in light of Aversano's documentary evidence to the contrary, Shabazz's conclusory allegations that Aversano denied him his medication and prevented other nurses from administering his medication fail to raise a genuine issue of material fact as to Aversano's deliberate indifference. See Cifarelli v. Village of Babylon, 93 F.3d 47, 51 (2d Cir. 1996) ("mere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment").

Therefore, it is recommended that defendants' motion in this regard be granted.

### 3. Miller

In his sixth cause of action, Shabazz contends that Miller, "who is responsible for the day to day operations," failed to remedy the cruel methods used by the medical staff. Am.

13

Compl. at ¶ 52.  Shabazz contends that Miller received his complaints about the medical staff but either ignored or never responded to these complaints.  However, after receiving Shabazz's letter of May 31, 2003, Miller directed First Deputy Susan A. Connell ("Connell") to investigate Shabazz's complaints.  Defs. Mem. of Law at Ex. M.  After an investigation, Connell found Shabazz's complaints of untimely medical attention to be "unfounded."  Id. at Ex. J.  Shabazz also filed a grievance regarding the alleged denial of medication, but Miller, accepting the findings of Connell, denied the grievance.  See id.  CORC upheld Miller's findings.  Id.[4]  Further, Shabazz offers no evidence that Miller knew anything about the alleged denial of medication other than the fact that Shabazz had complained about it in a letter and filed a grievance.  Thus, Shabazz has failed to raise a genuine issue of material fact as to Miller's deliberate indifference.

Therefore, it is recommended that defendants' motion in this regard be granted.

### E.  Eleventh Amendment

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any

---

[4]  To the extent that Shabazz contends that Miller's denial of his grievance constituted an Eighth Amendment violation, this claim must fail.  See Thompson v. New York, No. Civ. 99-9875(GBD)(MHD), 2001 WL 636432, at *7 (S.D.N.Y. Mar. 15, 2001) (holding that a "[s]uperintendent's adoption of the recommendation by the investigating officer cannot by itself demonstrate that he failed to remedy known misconduct."); see also Madison v. Mazzuca, No. Civ. 02-10299(RWS), 2004 WL 3037730, at *10 (S.D.N.Y. Dec. 30, 2004).

Foreign State." U.S. Const. amend. XI. "[D]espite the limited terms of the Eleventh Amendment, a federal court [cannot] entertain a suit brought by a citizen against his [or her] own State." Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98 (1984) (citing Hans v. Louisiana, 134 U.S. 1, 21 (1890)). Regardless of the nature of the relief sought, in the absence of the State's consent, a suit against the State or one of its agencies or departments is proscribed by the Eleventh Amendment. Halderman, 465 U.S. at 100.

A suit brought against a person in his or her official capacity is to be treated as a suit against the entity represented by that person, provided that the public entity received notice and an opportunity to respond. Brandon v. Holt, 469 U.S. 464, 471-72 (1985). In an official capacity action, a governmental entity is liable under § 1983 only when the entity itself is the "moving force" behind the deprivation. Kentucky v. Graham, 473 U.S. 159, 166 (1985). In other words, "the entity's 'policy or custom' must have played a part in the violation of federal law" for liability to attach. Id. at 166 (citations omitted); Hafer v. Melo, 502 U.S. 21, 25 (1991).

Here, the entity represented by defendant Branch, DOCS, cannot be found liable under § 1983 for the acts of which Shabazz complains. Shabazz fails to allege or prove that a policy or custom of DOCS contributed in any way to the alleged constitutional deprivations. Accordingly, it is recommended that defendants' motion be granted as to Branch in her official capacity.

15

## F. Qualified Immunity

Defendants Dr. Lee, Aversano, Miller, and Branch also contend that they are entitled to qualified immunity. Qualified immunity generally protects governmental officials from civil liability insofar as their conduct does not violate clearly established constitutional law of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Aiken v. Nixon, 236 F. Supp. 2d 211, 229-30 (N.D.N.Y. 2002) (McAvoy, J.), aff'd, 80 Fed.Appx. 146 (2d Cir. Nov. 10, 2003). A court must first determine that if plaintiff's allegations are accepted as true, there would be a constitutional violation. Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights were clearly established at the time of the alleged violation. Aiken, 236 F. Supp. 2d at 230. Here, the second prong of the inquiry need not be reached because, as discussed supra, accepting all of Shabazz's allegations as true, he has not shown that defendants violated his constitutional rights.

Therefore, it is recommended that defendants' motion for summary judgment be granted on this alternative ground as to Dr. Lee, Aversano, Miller, and Branch.

## III. Failure to Serve Defendant Senkowski

Shabazz's amended complaint contains claims against Daniel Senkowski ("Senkowski"), a defendant who has not been served with process. Rule 4(m) of the Federal Rules of Civil Procedure requires that service of process be effectuated within 120 days of the date of the filing of the complaint. See also N.D.N.Y.L.R. 4.1(b). Shabazz was granted in forma pauperis status. Docket No. 5. On October 20, 2004, a summons was issued for

16

service on Senkowski by the United States Marshal.  <u>See</u> Docket Entry dated 10/20/04.  On

January 12, 2005, the Senkowski summons was returned unexecuted by the Marshal.

Docket No. 19.  Shabazz made no further attempts to have Senkowski served.  More than

120 days have passed since the summons for Senkowski was issued.  Accordingly, it is

recommended that the complaint be dismissed as to Senkowski without prejudice pursuant

to Fed. R. Civ. P. 4(m) and N.D.N.Y.L.R. 4.1(b).

## IV. Conclusion

For the reasons stated above, it is hereby

**RECOMMENDED** that:

1. Defendants' motion for summary judgment (Docket No. 29) be **GRANTED** as

to all defendants except Senkowski and all causes of action;

2. The complaint be **DISMISSED** without prejudice as to defendant Senkowski;

and;

3. This action therefore be **TERMINATED** in its entirety as to all defendants and

all claims.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the

foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO**

**OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE**

**REVIEW.**  <u>Roldan v. Racette</u>, 984 F.2d 85, 89 (2d Cir. 1993); <u>Small v. Sec'y of HHS</u>, 892

F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

17

DATED:  September 18, 2006
       Albany, New York

United States Magistrate Judge